UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PRESTON WATTS, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) No. 20-cv-1820 |
| v. | )<br>) Judge Marvin E. Aspen |
| EMERGENCY TWENTY FOUR, INC., d/b/a EMERgency24, an Illinois corporation, | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Before us is a motion by Defendant Emergency Twenty Four, Inc. ("EMERgency24") to dismiss Plaintiff Preston Watts's Complaint for failure to state a claim. (Mot. to Dismiss ("MTD") (Dkt. No. 15); Mem. in Supp. of Mot. to Dismiss ("Mem.") (Dkt. No. 16).) For the following reasons, EMERgency24's motion to dismiss is granted, and Watts's Complaint is dismissed without prejudice.

## FACTUAL BACKGROUND

On March 16, 2020, Watts sued EMERgency24 under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, seeking class-wide relief. (Compl. (Dkt. No. 1), ¶¶ 1, 5.) The TCPA prohibits calls to cellular telephone numbers using an automatic telephone dialing system ("ATDS" or "autodialer") and/or artificial or prerecorded voice in most circumstances without the called party's prior express consent. *See* 47 U.S.C. § 227(b)(1), (b)(2)(C); 47 C.F.R. § 64.1200(a)(1); (*see also* Compl. ¶ 2.) Watts brings one count under § 227(b)(1)(A)(iii), alleging that EMERgency24 violated the TCPA by making non-emergency

calls to him and members of the proposed class using an ATDS without their prior express consent. (*Id.* ¶ 37.)

According to the Complaint, EMERgency24 provides burglar and fire alarm monitoring services to businesses throughout Illinois and the United States. (*Id.* ¶ 17.) Watts alleges that EMERgency24 uses an ATDS to call telephone numbers stored in its system to notify a customer when EMERgency24 receives a signal from that customer's alarm. (*Id.* ¶ 18.) Watts pleads that EMERgency24 stores in its ATDS the telephone numbers of persons who have not given their "express written consent" to be called or who have withdrawn their consent. (*Id.* ¶ 19.) Watts alleges that EMERgency24 has called him and other proposed class members numerous times without their "prior express written consent." (*Id.* ¶ 20.)

Watts alleges that since approximately August 2015, EMERgency24 has called Watts's cell phone every time an alarm is tripped at a business at which he previously worked. (*Id.* ¶ 22.) Watts claims that although he has not been employed by that business for several years, EMERgency24 has continued to use an ATDS to call his stored cell phone number without his "express written consent" and despite his repeated demands not to be contacted. (*Id.* ¶¶ 21–23.) Watts brings his Complaint on behalf of himself and a proposed class of other individuals who he believes also received calls from EMERgency24 because their cell phone numbers are stored in its system, even though they did not provide their express consent to be called or withdrew their consent. (*Id.* ¶¶ 24–26.) Watts alleges that he and the members of the proposed class are entitled to damages for each call EMERgency24 has made to their cell phone numbers using an ATDS in violation of the TCPA. (*Id.* ¶ 38 (citing 47 U.S.C. § 227(b)(3)(B)).)

## PROCEDURAL HISTORY

On June 26, 2020, EMERgency24 moved to dismiss Watts's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (MTD at 1.) On August 14, 2020, Watts moved to stay the case pending the Supreme Court's decision in *Facebook, Inc. v. Duguid*, No. 19-511. (Mot. to Stay (Dkt. No. 24).) Watts contended that *Duguid* would resolve a circuit split by settling the question of what constitutes an ATDS, an issue that EMERgency24 described as "critical" in its motion to dismiss. (Mot. to Stay at 2–3; Mem. at 1.) Watts also argued that *Duguid* would likely overturn the Seventh Circuit's decision in *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458 (7th Cir. 2020), which adopted a narrow interpretation of the TCPA's ATDS definition. (Mot. to Stay at 7–9.) We granted the motion to stay on October 5, 2020. (Dkt. No. 28.) On April 12, 2021, after the Supreme Court issued its opinion in *Duguid*, we lifted the stay. (Dkt. No. 34.)

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012); *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating a motion to dismiss, we "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks enough facts to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *see also Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do"). These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (internal citations omitted).

## ANALYSIS

EMERgency24 argues that Watts's Complaint does not plead sufficient facts alleging that EMERgency24 used an ATDS in violation of the TCPA. (Mem. at 2–8.) EMERgency24 also argues that even if Watts adequately alleged its use of an ATDS, the facts of the Complaint show that all calls placed by EMERgency24 were the type of emergency calls that the TCPA expressly exempts from liability. (*Id.* at 8 (citing 47 U.S.C. § 227(b)(1)(A)).)

**I.      Plaintiff's ATDS Allegations**

Watts's sole count alleges that EMERgency24 violated the TCPA's prohibition against placing non-emergency calls to cell phone numbers using an ATDS without the prior express consent of the called party. (Compl. ¶¶ 36–40); 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

In *Gadelhak v. AT&T Services, Inc.*, the Seventh Circuit held that a dialing system constitutes an ATDS only if it has the ability to randomly or sequentially generate the phone numbers it calls—an interpretation of ATDS that excludes equipment that simply dials numbers from a stored list or database. 950 F.3d at 468–69 (affirming district court's ruling that system defendant used to send customer service surveys via text message was not an ATDS because it did not use a random or sequential number generator). In its April 1, 2021 *Duguid* decision, the Supreme Court agreed with the Seventh Circuit, holding that in order for a device to constitute an ATDS under the TCPA, it must have the capacity to use a random or sequential number generator to either store or produce phone numbers to be called. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167, 1173 (2021). The Supreme Court concluded that the capacity to use a random or sequential number generator to either store or produce numbers is a "necessary feature" of an ATDS under the TCPA, and therefore a device is not an ATDS if it simply stores and dials numbers without using a number generator. *Id.* at 1173. The Court determined that the most reasonable interpretation of the TCPA's ATDS definition is that the clause "using a random or sequential number generator" modifies both verbs in the statutory definition, "store" and "produce." *Id.* at 1169–70. The statutory context confirmed this reading, according to the Court, because the broader interpretation—*i.e.*, that the clause "using a random or sequential number generator" applied only to "produce"—would mean that the TCPA prohibits the use of equipment with the capacity to store and dial numbers, and would therefore "capture virtually all modern cell phones." *Id.* at 1171. The Court observed that "[e]xpanding the definition of an autodialer to encompass any equipment that merely stores and dials telephone numbers would take a chainsaw" to the "nuanced problems" of robocalling "when Congress meant to use a scalpel." *Id.*

In its motion to dismiss, EMERgency24 contends that Watts's Complaint "simply declare[s]" that EMERgency24 used an ATDS to call Watts and does not provide sufficient supporting facts. (Mem. at 4.) EMERgency24 argues that the "only" supporting fact Watts offers is the allegation that EMERgency24's dialing equipment is "capable of contacting thousands of people a day." (*Id.* (citing Compl. ¶ 30.)) EMERgency24 further argues that "the definition of an ATDS turns on whether the equipment can randomly or sequentially generate[] numbers," and not on the number of calls it can place in a given timeframe. (*Id.*)

Here, Watts does not allege that EMERgency24's system uses a random or sequential number generator. Watts pleads that EMERgency24's dialing equipment "is capable of contacting thousands of people a day," "stores numbers . . . of persons who have not given their express written consent to be called or who have since withdrawn their consent," and is used to call "Plaintiff and others continually and at all hours of the day and night." (Compl. ¶¶ 19, 20, 30.) Watts also alleges that EMERgency24 uses its dialing system "to call telephone numbers stored in its system" to notify customers of a tripped alarm. (*Id.* ¶ 18.) These facts, however, do not support an inference that EMERgency24's system is an ATDS under the interpretation set forth in *Duguid*. Indeed, the alleged facts suggest that instead of randomly or sequentially generating Watts's number, EMERgency24's equipment stored Watts's number in a database and dialed that stored number because he was an employee at a business that used EMERgency24's alarm notification system. (*Id.* ¶¶ 18, 22); *see Drew v. Am. Directions Rsch. Grp.*, No. 20-cv-00402, 2020 WL 6118539, at *2 (N.D. Ill. Oct. 16, 2020) (denying motion to dismiss but observing that a TCPA plaintiff "must allege and later prove that [defendant's] equipment . . . was capable of either storing or producing telephone numbers using a random or sequential number generator" (citing *Gadelhak*, 950 F.3d at 463)); *Klueh v. Paul Vallas for All*

*Chi.*, No. 19-cv-00249, 2020 WL 4934975, at *6 (N.D. Ill. Aug. 24, 2020) (denying motion to dismiss but explaining that allegations that messages were sent to the Illinois-based numbers of persons identified as living in Chicagoland and "that the numbers came from a list or database" suggested "that the numbers were not randomly or sequentially generated, but that the messages were directed to specific numbers," which "affirmatively cut against an inference that [defendant's] messaging platform actually employed random or sequential number generation capacity"); *Snow v. Gen. Elec. Co.*, No. 5:18-cv-511, 2019 WL 2500407, at *4, *7 (E.D.N.C. June 14, 2019) (dismissing complaint where "plaintiff's own allegations foreclose[d] a determination that defendants" used an ATDS because "text messages did not reach [plaintiff] randomly"); *Daniel v. ComUnity Lending, Inc.*, No. 13-cv-488, 2014 WL 51275, at *5 (S.D. Cal. Jan. 6, 2014) (dismissing complaint where calls did not appear to be "random"). EMERgency24 argues that it "clearly called Plaintiff's number from an existing list of phone numbers," because "Plaintiff's former employer designated him as a contact person to notify in the event of an alarm activation." (Mem. at 6.) We observe that the nature of EMERgency24's alarm notification calls suggests that they likely were targeted at specific individuals. *See Mosley v. Gen. Revenue Corp.*, No. 1:20-cv-01012, 2020 WL 4060767, at *4 (C.D. Ill. July 20, 2020) ("Plaintiff offers no plausible explanation why a debt collection company would need or use a machine which had the capacity to dial or store randomly or sequentially generated numbers. It is far more likely that a telemarketing company, bank, or other seller of goods would desire to have machines with [that] capacity . . . . With no other reason, such as the nature of the company, to lean on for a plausibility argument, the fact that the device used *might* have had the capability to use randomly generated number systems fails to be more than a speculative possibility."). Although EMERgency24 perhaps should have removed Watts's number from its database when he

7

informed EMERgency24 that he had been terminated by his former employer, the Complaint does not allege that EMERgency24 randomly generated his number to call. (*See* Sur-Reply in Supp. of Mot. to Dismiss ("MTD Sur-Reply") (Dkt. No. 39) at 3–4.)

Watts argues that "it is at least plausible [EMERgency24's] system has the functionality described in *Gadelhak* to qualify as an ATDS," but that "it is impossible for Plaintiff to know what the precise capabilities of Defendant's automatic telephone dialing system were without the benefit of discovery." (Resp. to Mot. to Dismiss (Dkt. No. 27) at 7; *see also* Sur-Resp. to Mot. to Dismiss (Dkt. No. 38) at 2 (arguing that discovery may show that Defendant's system fits *Duguid*'s definition of an ATDS).) It is true that *Gadelhak* was decided at the summary judgment stage, and a plaintiff at the pleading stage may not be able to "plead the technical details of the system used by a defendant when the defendant has that information." *Klueh*, 2020 WL 4934975, at *6; *see also Torres v. Nat'l Enter. Sys., Inc.,* No. 12 C 2267, 2012 WL 3245520, at *3 (N.D. Ill. Aug. 7, 2012) (rejecting defendant's argument that "the amended complaint lacks sufficient details to plausibly suggest that [defendant] used an [ATDS]" because it would not "be reasonable to hold plaintiffs in TCPA cases to the standard proposed by [defendant] since it would be virtually impossible, absent discovery, for any plaintiff to gather sufficient evidence regarding the type of machine used for a communication left on a plaintiff's voicemail"). However, even though a plaintiff "will rarely, if ever, know the specific functionality of a system used by a defendant" before discovery, the plaintiff must still allege sufficient facts to "nudge" his claim "across the line from conceivable to plausible." *Camunas v. Nat'l Republican Senatorial Comm.*, No. 21-1005, 2021 WL 2144671, at *6 (E.D. Pa. May 26, 2021) (quoting *Davis v. D.R. Horton, Inc.*, No. 19-1686, 2020 WL 1244848, at *2 (D. Del. Mar. 16, 2020) and *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974) (dismissing complaint where plaintiff did not

plausibly allege defendant used an ATDS to send messages because pleading did not identify specific content of messages, the phone number from which the messages were sent, or whether the number was a short code); *Ananthapadmanabhan v. BSI Fin. Servs., Inc.*, No. 15 C 5412, 2015 WL 8780579, at *4 (N.D. Ill. Dec. 15, 2015) (holding that plaintiff failed to sufficiently allege use of ATDS because complaint merely parroted TCPA's language and plaintiff "must supply enough additional, independent facts to raise a reasonable expectation that discovery will reveal evidence of the alleged misconduct" (internal citation and quotation marks omitted)); *Mosley*, 2020 WL 4060767, at *3 (explaining that "generally no plaintiff ought to be held to a standard that requires the plaintiff to plead technical information [ ] which they could not have pre-discovery," but a claim is not plausible "because a plaintiff merely alleges the dialer system has the capacity to randomly or sequentially generate numbers, without any factual basis for such allegations," as that standard "would make huge swaths of otherwise innocuous phone calls at risk of litigation").

As with any Complaint facing a Rule 12(b)(6) motion, "the well-pleaded facts . . . must allow the court to infer more than the mere possibility of misconduct" to survive. *Langworthy v. Honeywell Life & Accident Ins. Plan*, No. 09 CV 2177, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009); *Mosley*, 2020 WL 4060767, at *4 (finding that plaintiff's ATDS allegations were insufficient and explaining that "*Twombly* sought to limit claimants to the plausible, not just the possible"). Courts in this Circuit have described *Gadelhak* as "rais[ing]" the "standards for pleading and proving a claim under [TCPA] section 227(b)(1)[(A)](iii), especially in regard to the [ATDS] element." *Perez v. Quicken Loans, Inc.*, No. 19-cv-2072, 2020 WL 1491145, at *2 (N.D. Ill. Mar. 27, 2020). "While it is true, as many courts have observed, that a plaintiff should not be required to plead specific facts as to the technical specifications of the type of call system

9

employed by the defendant, it also cannot be the case that every barebones TCPA claim can survive a motion to dismiss" with conclusory allegations about unwanted calls. *Id.* at *3 (holding that plaintiff's allegations about frequency of calls and pauses during calls from defendant were "too thin to support an inference that Defendant used an ATDS"). Allegations that "merely recite the words of the [TCPA]" or that simply state that the defendant used an ATDS "are conclusory." *Klueh*, 2020 WL 4934975, at *6. "To claim that [defendant] *might* have been us[ing] a device that *might* have the capacity to randomly or sequentially generate numbers is clearly speculation." *Mosley*, 2020 WL 4060767, at *4. Instead, a TCPA complaint must include "more robust" details to sufficiently allege the use of an ATDS. *Perez*, 2020 WL 1491145, at *3. This is in line with pre-*Gadelhak* decisions that required a plaintiff to present facts beyond the bare allegation that the defendant used an ATDS to support a TCPA claim. *E.g.*, *Bader v. Navient Sols., LLC*, No. 18-cv-1367, 2019 WL 2491537, at *2 (N.D. Ill. June 14, 2019) (granting defendant's motion for judgment on the pleadings and dismissing complaint with prejudice because plaintiff did not allege facts showing that defendant "used a device that had the ability to generate random or sequential numbers and dial such numbers"); *Izsak v. DraftKings, Inc.*, 191 F. Supp. 3d 900, 904 (N.D. Ill. 2016) (holding that TCPA claim was sufficiently alleged but agreeing with the view that where the use of an ATDS is an element of the claim, then "it is not sufficient to recite that fact verbatim without other supporting details" (quoting *Ananthapadmanabhan*, 2015 WL 8780579, at *4)); *Hanley v. Green Tree Servicing, LLC*, 934 F. Supp. 2d 977, 983 (N.D. Ill. 2013), *on reconsideration* (June 7, 2013) (dismissing complaint where plaintiff pleaded "only three factual allegations" because the pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (quoting *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949)).

Although Watts may be able to amend his Complaint to raise the possibility of relief above the "speculative level," *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, he has not yet done so. Therefore, dismissal is appropriate.

## II. Emergency Purposes Exception

EMERgency24 also argues that, even if it did use an ATDS to call Watts, those calls are exempt from the TCPA's prohibitions on using an ATDS under the "emergency purposes" exception. *See* 47 U.S.C. § 227(b)(1)(A)–(B); *see also* 47 C.F.R. § 64.1200(f)(4) (defining "emergency purposes" under the TCPA to mean "calls made necessary in any situation affecting the health and safety of consumers").[1] Because Watts has not alleged sufficient facts to support a reasonable inference that EMERgency24 used an ATDS to place the calls at issue, we need not reach the issue of whether those calls qualify for the "emergency purposes" exception.[2]

---

[1] The "emergency purposes" exception is an affirmative defense on which the defendant bears the burden of proof. *Kolinek v. Walgreen Co.*, No. 13 C 4806, Dkt. No. 66, at 1 (N.D. Ill. Aug. 11, 2014) (citing *Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 518174, at *2 (N.D. Ill. Feb. 10, 2014), *vacated on other grounds on reconsideration*, 2014 WL 3056813 (N.D. Ill. July 7, 2014)). The "proper way to seek a dismissal based on an affirmative defense under most circumstances is not to move to dismiss under Rule 12(b)(6) for failure to state claim," but to "answer and then move under Rule 12(c) for judgment on the pleadings." *Burton v. Ghosh*, 961 F.3d 960, 964–65 (7th Cir. 2020) (collecting cases). However, there is a "narrow and pragmatic exception if the availability of a defense is apparent in the plaintiff's complaint itself." *Id.* at 965; *see also Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008). EMERgency24 contends that the defense is apparent in the Complaint's allegations, including the allegations that EMERgency24 provides burglar and fire alarm monitoring services and calls customers to alert them to "take whatever action is necessary to protect the property at issue." (Mem. at 8 (quoting Compl. ¶¶ 17–18).)

[2] If Watts amends his Complaint to include sufficient facts to plausibly allege that EMERgency24 used an ATDS, then the emergency purposes exception may not apply to certain types of calls made to Watts or other individuals who requested that EMERgency24 stop contacting them. *Coleman v. Rite Aid of Ga., Inc.*, 284 F. Supp. 3d 1343, 1346–47 (N.D. Ga. 2018) (holding that where the recipient of an emergency call requests that the caller stop calling, the exception no longer applies); *St. Clair v. CVS Pharm., Inc.*, 222 F. Supp. 3d 779, 780–81 (N.D. Cal. 2016) (continuing to call about a prescription "when the customer has made clear that he does not want or need the calls, does not fall within the definition of an 'emergency

## CONCLUSION

For the foregoing reasons, Defendant Emergency Twenty Four, Inc.'s motion to dismiss (Dkt. No. 15) is granted, and Plaintiff Preston Watts's Complaint (Dkt. No. 1) is dismissed in its entirety without prejudice. Plaintiff may file an amended complaint within 21 days of this ruling if he can do so in accordance with this Opinion and Federal Rule of Civil Procedure 11. If Plaintiff does not file an amended complaint by that deadline (or any extension of it granted by the Court), we will convert the dismissal to "with prejudice" and enter a final judgment under Federal Rule of Civil Procedure 58. It is so ordered.

                                                   */s/ Marvin E. Aspen*
                                                Honorable Marvin E. Aspen
                                                United States District Judge

Dated: June 21, 2021
       Chicago, Illinois

---

purpose'"); *Laccinole v. Appriss, Inc.*, 453 F. Supp. 3d 499, 504 n.4 (D.R.I. 2020) ("The emergency exception does not apply where an entity calls an individual who has previously asked not to be contacted."). Here, Watts alleges that he asked EMERgency24 to stop calling him and informed EMERgency24 that he had been terminated years ago by the business where the relevant alarm was located. (Compl. ¶¶ 22, 23.)